DAVID L. REYNOLDS, TRUSTEE *v.* EDMUND J. RAMOS ET AL.

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

Argued June 4—decision released September 7, 1982

*Eric M. Gross,* with whom, on the brief, was *Bernard Green,* for the appellant-appellee (defendant Paul J. Ramos).

*Robert H. Boynton,* for the appellee-appellant (plaintiff).

ARMENTANO, J. The issues presented by this appeal from the judgment rendered in a mortgage foreclosure proceeding address the propriety of the trial court's rulings concerning (1) the rate of interest to be applied on the note subsequent to its

maturity date; (2) the granting of certain credits, which were applied to reduce the face amount of the note; and (3) the date that these credits became applicable as offsets to the debt.

From the evidence presented at trial, the court could reasonably and logically have found the following facts: On December 14, 1973, the defendant Edmund Ramos, then the owner of two pieces of real property located in Milford, borrowed $27,500 from Anthony Maresco and gave Maresco his note for that amount secured by a mortgage on the Milford properties. In pertinent part, the note provided for "interest at the rate of one (1%) percent per month on the unpaid balance, and said principal and interest shall be payable as follows: Twelve interest payments of Two hundred Seventy-Five and 00/100 ($275.00) Dollars per month shall be made. At the end of twelve months the entire principal shall be due and payable." On May 16, 1974, Edmund Ramos quitclaimed the two mortgaged properties to the defendant Paul Ramos, his brother.[1] After Edmund Ramos made eight interest payments between January 1 and October 1, 1974, totaling $2200, the note became in default and Maresco obtained a judgment of foreclosure on May 2, 1975.

On December 2, 1975, the foreclosure judgment obtained by Maresco was set aside and the note and mortgage on the Milford properties were assigned to the plaintiff, David Reynolds, as trustee of a trust created by Nicholas Kot, Reynold's father-in-law, for the benefit of Kot's children and their lineal

---

[1] Paul Ramos thereafter mortgaged both pieces to the defendant Arthur A. Lunin, Trustee. This mortgage was the subject of a cross complaint by Paul Ramos against Lunin. The parties settled the cross complaint and it was subsequently withdrawn.

descendants. Reynolds made a payment of $28,500 to Maresco in return for the assignment of the note and mortgage. Additionally, the defendant Peter Ramos, the brother of the defendants Edward and Paul Ramos, made a payment of $4100.57 to Maresco to satisfy the interest arrearages which had accrued on the note. Kot was active in the management, administration, purchase and sale of trust property, and had worked with the Ramos brothers on numerous occasions prior to the assignment of the Maresco mortgage.

Two other transactions involving parcels of real property are germane to this appeal. On May 16, 1974, the same date that Edmund Ramos transferred the Milford properties to his brother Paul, he transferred real property located at 809 Washington Avenue and 271 Sailors Lane, Bridgeport, to his brothers Paul and Peter Ramos. The Washington Avenue property was financed by a second mortgage held by the plaintiff Reynolds as trustee of the Kot trust. The mortgage was subsequently foreclosed. Thereafter, in the fall of 1975, Peter and Paul Ramos negotiated with Kot to purchase the property for $40,000. Peter Ramos gave Kot a down payment totaling $6000 in three installments.[2] The sale was never consummated, and Kot allegedly agreed to credit the $6000 toward the mortgage[3] on the Milford properties held by the plaintiff.

---

[2] Peter Ramos gave Nicholas Kot a check in the amount of $2000 on October 3, 1975, and a second check in the amount of $3000 on November 5, 1975. Both checks were payable to Kot, who endorsed them to David Reynolds in his trustee capacity. Additionally, Peter Ramos gave Kot $1000 in cash in the early part of 1976.

[3] Although Kot admitted that he received $6000 from Peter Ramos as a down payment on 809 Washington Avenue, he denied agreeing to apply that amount toward the Maresco mortgage.

The Sailors Lane property was encumbered by a mortgage from Edward Ramos to Kot. After the property was transferred to Paul and Peter Ramos, the mortgage was foreclosed. Kot thereafter hired Paul Ramos to make substantial repairs to the premises. This work was done between September 22 and October 22, 1976. The total value of labor and materials necessary to complete the job came to $4892.93, and Kot reimbursed Paul Ramos in the amount of $700. Kot allegedly agreed that the difference, $4192.93, would be credited toward the mortgage at issue in this appeal.

In this appeal from the judgment setting the debt due the plaintiff at $33,469.10,[4] the defendant Paul Ramos claims (1) error in the application of the 12 percent interest rate on money owed after the maturity date of the note, and (2) error in the date that credits from the Bridgeport property transactions were applied so as to reduce the balance due the plaintiff. Conversely, the plaintiff cross appeals alleging error in (1) the principal amount of the note debt as found by the trial court,[5] and

---

[4] Employing the 12 percent per annum interest figure, the trial court arrived at this amount as follows: $27,500 plus $6462.60 (interest from December 14, 1973, the date of creation of the note, to December 2, 1975, the date the plaintiff purchased the note) minus $2200 (interest payments by Edmund Ramos) minus $4100.57 (interest payment by Peter Ramos) equals $27,662.03, which was the amount due the plaintiff when he purchased the note. $27,662.03 plus $16,000 (interest at $275 per month from December 2, 1975, until December 2, 1980, the date of judgment, or 60 months) minus $6000 (amount of down payment on 809 Washington Avenue, found by the court to be a credit against the note) minus $4192.93 (amount of unreimbursed work done on 271 Sailors Lane, found by the court to be a credit against the note) equals $33,469.10, the amount of the debt. The accuracy of these figures is discussed later in this opinion.

[5] The plaintiff argues on appeal that because he purchased the note for $28,500, he should recover that amount because the defendant Paul Ramos requested that he buy the note. We disagree. In a mortgage foreclosure proceeding, the trial court must determine

(2) the allowance of credits to the defendant and not to himself.

Because a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to ensure that complete justice is done. *City Savings Bank* v. *Lawler,* 163 Conn. 149, 155, 302 A.2d 252 (1972); *Hartford Federal Savings & Loan Assn.* v. *Lenczyk,* 153 Conn. 457, 463, 217 A.2d 694 (1966). Although equitable power must be exercised equitably; *Hamm* v. *Taylor,* 180 Conn. 491, 497, 429 A.2d 946 (1980); "[t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." *Kakalik* v. *Bernardo,* 184 Conn. 386, 395, 439 A.2d 1016 (1981). In the exercise of its sound discretion, the trial court may, for example, reduce the amount of the indebtedness as stated within the note under special circumstances. *Hamm* v. *Taylor,* supra, 497.

It is well settled that it is the province of the trier of fact to weigh the evidence presented and to determine its credibility and effect. *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 359, 294 A.2d 305 (1972). When we review the exercise of discretion by the trial court, every reasonable presumption will be given in favor of the correctness

the amount of the mortgage debt. The plaintiff, as assignee of the mortgage, "stood in the shoes of his assignor, with the same rights." *Leonard* v. *Bailwitz,* 148 Conn. 8, 13, 166 A.2d 451 (1960). Maresco, the assignor, could not have recovered more than the amount of the note plus accrued interest. Moreover, the plaintiff has not asserted any independent right to assume the special status of a holder in due course and therefore his taking of the note after default subjected him to all defenses applicable against the assignor Anthony Maresco. The trial court did not err in finding the initial mortgage debt to be $27,500.

of its ruling. *DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303 A.2d 709 (1972) ; *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714 (1970). On appellate review, therefore, "the ultimate issue is whether the court could reasonably conclude as it did . . ."; *DiPalma* v. *Wiesen,* supra, 299 ; or whether, according to recognized principles of equity, abuse of discretion is manifest or an injustice appears to have been done. *Thomas* v. *Thomas,* 159 Conn. 477, 480, 271 A.2d 62 (1970).

We first address the issue of the rate of interest applicable to the note after maturity. Under General Statutes § 37-1 (b), "[u]nless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt."[6] See *Little* v. *United National Investors Corporation,* 160 Conn. 534, 537–38, 280 A.2d 890 (1971). The trial court found this statute inapplicable, concluding from the note and testimony at trial that the parties had agreed to pay 12 percent both before and after maturity. We must thus determine whether the court could reasonably and logically reach the conclusion which it did reach.

During the examination of Nicholas Kot the following questions were asked and the following responses given:

"Q. What was the amount of interest that you— was there an agreed-upon interest rate?

"A. Absolutely; sure.

---

[6] The legal rate of interest at the date of judgment was 8 percent per annum. General Statutes § 37-1 (a). Prior to October 1, 1979, the legal rate was 6 percent per annum. Public Acts 1979, No. 79-364, § 1.

"Q. And would you tell the Court what that agreed-upon interest rate was? . . .

"THE WITNESS: What was the agreement? . . ..

"A. Twelve percent a year."

From the above testimony, the court could have reasonably concluded that the oral agreement was to pay postmaturity interest at the rate of 12 percent per annum. The court was not in error in finding that "the agreement was to pay one percent per month as long as any balance was unpaid."

We next consider the propriety of the credits applied by the trial court to reduce the amount of the note. The plaintiff asserts two grounds of error in allowing credits: insufficiency of the evidence and the unclean hands defense. Only the former claim is properly before us.[7]

On the basis of the record, we cannot say that the evidence does not reasonably support the credits awarded by the trial court. There was conflicting testimony with respect to the alleged agreement to apply the down payment on 809 Washington Avenue to the mortgage held by the plaintiff. Similarly, the amount and cost of the work completed at 271 Sailors Lane, along with the existence of a credit

---

[7] On the record before us, the plaintiff, for the first time in his preliminary statement of issues on appeal and subsequently in his brief, challenges the credit awards on the basis of the doctrine of unclean hands. This attack is primarily based upon a cross complaint concerning an allegedly fraudulent mortgage between the codefendants which was settled between the parties and withdrawn. We have repeatedly stated that issues not distinctly raised at trial will not be considered by this court. Practice Book § 3063; see *McDermott* v. *New Haven Redevelopment Agency*, 184 Conn. 444, 449, 440 A.2d 168 (1981). Although equitable power must be exercised equitably; *Hamm* v. *Taylor*, 180 Conn. 491, 497, 429 A.2d 946 (1980); this does not place an affirmative duty upon the trial court to consider every possible equitable defense not properly before it.

agreement, were disputed. The plaintiff further asserts that in dealing with the defendants the trust lost money on the mortgage foreclosure and on rental income at 809 Washington Avenue. Those allegations were, however, rebutted by the defendants' testimony, and, even if credible, there was no evidence of any agreement to apply the losses to the Maresco mortgage. This court cannot retry the case. *Vincenzi* v. *Cerro*, 186 Conn. 612, 617, 442 A.2d 1352 (1982). There is ample evidence to support the credits awarded. The trial court did not abuse its discretion.[8]

Finally, we consider the propriety of the date chosen by the trial court to apply the credits as an offset to the mortgage debt. The court applied the credits as of December 1, 1980, the date of judgment, because "there is no evidence as to when the agreements concerning the credits were made." With respect to 809 Washington Street, however, the defendant Peter Ramos testified that in 1976 he met with Kot and they agreed to apply the $6000 toward the mortgage. Moreover, a letter dated December 7, 1976 from the plaintiff, as trustee, to Peter Ramos indicates a termination of the purchase agreement between the parties. Similarly, testimony by Paul Ramos concerning the work done

---

[8] The plaintiff makes the additional argument with respect to 271 Sailors Lane that the owner, Nicholas Kot, was without authority to bind the trust to an agreement concerning the plaintiff's mortgage. Whether Kot was an agent of the trust, thus possessing the authority to bind it, is a question of fact to be determined from the conduct of the parties under all the circumstances. *Lettieri* v. *American Savings Bank*, 182 Conn. 1, 9, 437 A.2d 822 (1980). There was ample evidence in the record to conclude that David Reynolds, as trustee, clothed Kot with authority to bind the trust, and that the defendants reasonably believed Kot to have this authority. Kot therefore had apparent authority to bind the trust to an agreement concerning 271 Sailors Lane. Id., 13–14.

on 271 Sailors Lane establishes that the job was completed as of late October, 1976, and that he and Kot agreed that the balance due would be credited to the mortgage.

In reaching the conclusion that there were, in fact, agreements to credit the mortgage, the trial court has determined the weight and credibility to be given the foregoing evidence. A conclusion that those agreements were made is consistent only with the conclusion that they were made sometime in 1976. We are thus compelled to conclude that the agreements were reached by December 31, 1976.[9] Accordingly, because the credits must be applied as of that date, the amount of the debt due the plaintiff is $28,927.55.[10]

There is error, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified to accord with this opinion.

In this opinion the other judges concurred.

---

[9] At oral argument the defendant conceded that this was a reasonable date.

[10] This conclusion requires a recalculation of the debt as found by the trial court. Initially, we note error in the calculation of the amount due the plaintiff when he purchased the note. See footnote 4, supra. The correct amount has been calculated as follows: $27,500 plus $6490.06 (interest at 1 percent per month from December 14, 1973 to December 2, 1975) minus $2200, minus $4100.57 equals $27,689.49. The total of $27,689.49 plus $3290.93 (interest on $27,500 at 1 percent per month from December 2, 1975 through December 31, 1976) is $30,980.42. The interest due the plaintiff as of January 1, 1977 was thus $3480.42. The credits applicable as of January 1, 1977 reduce the amount due on the note to $17,307.07. Interest on this amount at 1 percent per month from January 1, 1977 until December 2, 1980, the date of judgment, is $8140.06. The debt due the plaintiff is thus $28,927.55 ($17,307.07 plus $3480.42, plus $8140.06). The attorney's fees and other costs assessed by the trial court are not at issue on this appeal and need not be modified.