[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This is a foreclosure action by the New England Savings Bank ("plaintiff") against Village Brook Plaza Limited Partnership ("owner") and Willis F. Zeiger ("Zeiger") who is the holder of a purchase money mortgage. The plaintiff in its complaint alleges that the owner is indebted to the plaintiff by virtue of a promissory note in the original principal amount of $1 million, the payment of which is secured by a construction mortgage and that by virtue of a default it is entitled to foreclosure. The plaintiff claims priority over a purchase money mortgage of the defendant Zeiger.
After the pleadings were closed as to the defendant CT Page 531 Zeiger, both the plaintiff and the defendant Zeiger filed motions for summary judgment pursuant to the provisions of section 378 et seq. of the Connecticut Practice Book with regard to the sole and single issue of the priority as between the plaintiff's later construction mortgage and the defendant Zeiger's earlier purchase money mortgage. The interests of the defendant Village Brook Plaza Limited Partnership are not involved in the motions for summary judgment. No other issues are raised by the motion of either party. Both parties have filed appropriate memoranda and affidavits pursuant to the rules. Accordingly, the decision will be considered an interlocutory ruling with regard to the issue of priorities only as permitted by the Practice Book. Connecticut Practice Book section 385.
The material facts are not in dispute and may be stated as follows. On or about December 19, 1986, the defendant Zeiger conveyed property located at 1687 and 1679 Route 12 and 2 Chapman Lane in the town of Ledyard, Connecticut (hereinafter "the property") to Village Brook Plaza Limited Partnership. In connection with the payment of the purchase price, Village Brook Plaza to secure a promissory note in the original principal amount of $190,000.00, mortgaged the property to Zeiger by mortgage deed dated December 19, 1986 and recorded December 22, 1986 on the Ledyard Land Records at Volume 161, p. 619 (purchase money mortgage). On December 19, 1986, Zeiger and Village Brook Plaza Limited Partnership entered into a "Subordination and Substitute Security Agreement" which was recorded on the Ledyard Land Records at Volume 187, p. 917.
The pertinent part of that Agreement provides:
 . . . With regard to property located at 1687 and 1679 Route 12, and 2 Chapman lane (sic) (Exhibit A attached hereto and incorporated herein by reference) the Seller agrees as follows:
 1. To SUBORDINATE a mortgage conveyed this date to Seller (Exhibit B attached hereto and incorporated herein by reference) to a mortgage or mortgages to be executed hereafter by the Buyer, its sucessors (sic) or assigns, covering said premises and securing a loan or loans made specifically for the purpose of constructing improvements thereon. Subordination shall be effected by execution of a subordination agreement CT Page 532 provided by Buyer at Buyer's expense. . . .
Over two years later, Village Brook Plaza Limited Partnership, to secure a construction loan in the original principal amount of $1 million, granted a construction mortgage to the plaintiff on January 13, 1989. The construction mortgage and note are owned by the plaintiff and is in default. A Construction Mortgage Rider was attached to the construction mortgage which provided for the payment of the loan to the borrower in installments as work progresses ". . . the time and amount of each advancement to be at the sole discretion and upon the estimate of the lender, so that when all the work on the property shall have been completed to the satisfaction of the lender, the lender shall then pay over to the borrower any balance necessary to complete the full loan. ." There is no indication in the Construction Mortgage Rider what the construction will consist of or whether the "balance necessary to complete the full loan" will necessarily be applied to work on the premises.
At no time prior to the construction mortgage did the defendant Zeiger actually execute a subordination of the purchase money mortgage to the construction mortgage or any other lien.
After the recording of the construction mortgage on January 13, 1989 (in the Ledyard Town Clerk's Office) an attorney representing Village Brook Plaza Limited Partnership began correspondence with Zeiger's attorney requesting the defendant Zeiger to sign a subordination agreement specifically subordinating the purchase money mortgage to the construction mortgage. A draft of such an agreement was forwarded to the defendant Zeiger. Such correspondence continued thereafter, both directly with defendant Zeiger and through his attorney requesting at various times that a subordination agreement be signed and negotiating various terms relating to partial releases so that portions of the premises could be conveyed.
As indicated above, the defendant Zeiger never did sign either the subordination agreement forwarded to him or any other agreement specifically subordinating the lien of the purchase money mortgage to the lien of the later construction mortgage.
No information has been provided as to the exact time when the plaintiff became aware that there was no subordination agreement specifically subordinating the prior purchase money mortgage to the plaintiff's subsequent construction mortgage, nor is information provided with regard CT Page 533 to the schedule of payments by the plaintiff to the defendant Village Brook Plaza Limited Partnership of the $1 million loan amount. There is no indication in the documentation supplied that the plaintiff ever requested the defendant Zeiger to provide a subordination agreement. In fact, the affidavit of Ann Chambers, a vice president of the plaintiff bank, suggested that the bank in granting the subsequent construction mortgage of $1 million relied upon the "mortgage subordination and substitute security agreement between William F. Zeiger and Village Brook Plaza . . . previously recorded on the Ledyard Land Records in Volume 187 at page 917 . . ."
It is clear from the affidavit of the plaintiff's officer, therefore, that the plaintiff had specific knowledge of the prior purchase money mortgage at the time of the subsequent construction mortgage.
These facts raise the legal issue of whether a previously recorded purchase money mortgage should be subordinated by a court of equity, even though it has not actually been subordinated by the parties because of the contract provisions between Zeiger and Village Brook Plaza contained in the "subordination and substitute security agreement".
Again, the operative portion of that agreement reads as follows:
. . . The seller agrees as follows:
 1. To SUBORDINATE a mortgage conveyed this date to seller . . . to a mortgage or mortgages to be executed hereafter by the Buyer, its successors or assigns, covering said premises and securing a loan or loans made specifically for the purpose of constructing improvements thereon. SUBORDINATION shall be effected by execution of a subordination agreement provided by Buyer at Buyer's expense . . .
Neither party has brought to the Court's attention any previous decision factually similar to this case. The plaintiff, relying generally on equitable principles which are thoroughly briefed in its memorandum, claims that in a balancing of equities in order to accomplish justice, the court should treat the defendant Zeiger "as if he had done what he had promised and contracted to do — to have executed the document evidencing subordination of his mortgage CT Page 534 to the plaintiffs" (Plaintiff's Brief, p. 7). The plaintiff also ". . . asked the court to construe the mortgage subordination and substitute security agreement as having effectuated the subordination without the need for any additional documentation, since the condition subsequent (that the bank's mortgage was for construction purposes) was satisfied. . ."
The defendant Zeiger makes the simple claim that since no actual subordination agreement was signed or provided, the previously recorded purchase money mortgage should take priority over the subsequent construction mortgage and, by implication, that if the plaintiff relied upon the "subordination and substitute security agreement" in granting its subsequent mortgage, its reliance was misplaced.
The law relating to the priority of interests has its roots in early Connecticut jurisprudence. A mortgage which is recorded first is ordinarily entitled to priority so long as every grantee is provided a reasonable time to get his deed recorded. Beers v. Hawley, 2 Conn. 467 (1818). See, St. Andrews v. Lockwood, 2 Root 239 (1795); 1 Swift's Digest 125 (1822).
Section 47-10 of the Connecticut General Statutes requires that all interests in land be recorded on the land records of the town in which the land lies. A mortgage is a conveyance within the contemplation of that statute. Second National Bank v. Dyer, 121 Conn. 263 (1936).
It is the land records ". . . upon which Connecticut's property rights are based. It is elementary that nothing should be allowed to weaken the effectiveness of that system of records. . . To act otherwise would invite chaos. . ." Wilson v. DeGenaro, 36 Conn. Sup. 200, 207 (1979).
However, "because a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to insure that complete justice is done. . . Although equitable power must be exercised equitably . . . the determination of what equity requires in a particular case, the balancing of the equities is a matter for the discretion of the trial court. . ." Reynolds v. Ramos, 188 Conn. 316,320 (1982).
"Equity always looks to the substance of a transaction and not to mere form." Connecticut National Bank v. Chapman, 153 Conn. 393, 397 (1966) (where the court reestablished the priority of a first mortgage which was released by mistake). "In an equitable action the court CT Page 535 endeavors to do complete justice. . ." McGaffin v. Roberts,193 Conn. 393, 404 (1984).
There is a presumption in the law that one taking a mortgage upon land knows of all prior encumbrances of record affecting it. Homeowners Loan Corporation v. Sears, Roebuck Company, 123 Conn. 232, 240 (1937).
Equity will not intervene to benefit one who is the victim of his own negligence, where to do so would work an inequity on another. See, Homeowners Loan Corporation v. Sears, Roebuck Company, 123 Conn. 232, 243 (1937); Dunphy v. Ryan, 116 U.S. 491 (1885); 27 Am. Jur.2d, Equity section 130, p. 659.
This case is clearly not a case involving a so-called "automatic" subrogation (see, First Connecticut Small Business Investment Company v. Arba, Inc., 170 Conn. 168
(1979)). Paragraph one of the agreement was a part of a contract by which the defendant Zeiger agreed with the defendant Village Brook Plaza to effectuate a subordination at some time in the future by the "execution of a subordination agreement provided by Buyer at Buyer's expense" to subordinate the lien of the purchase money mortgage to a mortgage "securing a loan or loans made specifically for the purpose of constructing improvements. . ." Neither of the parties claims the terms are ambiguous or subject to interpretation. In fact, these terms are clear on their face that a subordination of the purchase money mortgages was not effected by the signing of the "Subordination and Substitute Security Agreement" but on the contrary would require a subsequent agreement to be signed by Zeiger. No subsequent agreement was in fact signed.
According to the normal rules of priority as above, the Zeiger purchase money mortgage, being prior in time, would be prior in right. This rule is part of the rules of our real estate title recording system, the sanctity of which has been said to be grounded in prudence.
The plaintiff in oral argument seems to have added to the above claims an additional argument that Zeiger should not be permitted to come to a court of equity asking for the priority that the normal system would provide since he has, they claim, not complied with the terms of his agreement to provide a subordination and thus has unclean hands. To adopt such an argument, the court would have to conclude, as the plaintiff asserts, that Zeiger was under an obligation to provide a subordination to its $1 million mortgage. The plaintiff acknowledges there was a condition included in that agreement. Plaintiff claims that by attaching a "Construction CT Page 536 Mortgage Rider" to the construction mortgage there was compliance with the condition that the loan be "made specifically for the purpose of constructing improvements thereon" as set forth in the Subordination and Substitute Security Agreement. The Court cannot reach that conclusion. In carefully crafting the terminology of the Subordination and Substitute Security Agreement to require a subsequent subordination agreement to be signed, Zeiger reserved the right to require that such a subsequent subordination agreement contained terms acceptable to him and reasonably contemplated to carry into effect the provisions of the Subordination and Substitute Security Agreement. To require the defendant Zeiger to accept without participation the terms or the Construction Mortgage Rider would put him at the mercy of the plaintiff bank to determine what the improvements would be which were to be put on the premises, what funds were required for those improvements, what schedule of payments would be appropriate to accomplish the same, and how much of the loan would be left to be paid over to Village Brook Plaza at the end of the construction "to complete the full loan". In fact, Zeiger, by the provision for a subsequent subordination agreement, put himself in the position where he would be able to negotiate those factors among others to his satisfaction and for his protection in connection with the subsequent subordination.
One will only have to examine the terms of the proposed Subordination Agreement forwarded to Zeiger's attorney after the fact on January 26, 1989 (Steadman Affidavit, Exhibit C) to see that the terms of this proposal would have required Zeiger to give up the condition which he had negotiated with regard to any protection he might have to assure himself that the funds were to be used only for improvements on the property. Therefore, in balancing the equities and the respective interests of the parties under the circumstances present in the case at bar, it is clear that to readjust the priorities which the recording system would dictate would of necessity disadvantage the defendant Zeiger for the benefit of the plaintiff.
Accordingly, the Court in balancing those interests can find no reason to deviate from the sanctity of the normal recording rules that the first in time is the first in right.
The Court concludes, therefore, that there is no material or genuine issue of fact with regard to the issue of priority as between the plaintiff's construction mortgage and the defendant Zeiger's purchase money mortgage, and the Court grants the defendant Zeiger's motion for summary judgment that the Zeiger purchase money mortgage has priority over the CT Page 537 plaintiff's subsequent construction mortgage and thus denies the plaintiff's motion.
Leuba, J.