[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 6, 1996, the plaintiff, 345 Benham Avenue, Inc., (Benham), filed a two-count amended complaint against the defendants, Madison Square Associates Limited Partnership (Madison); Amity Road Shopping Center, Inc.; Robert Fers, Incorporated, a/k/a The Robert S. Fers Incorporated; Pad Two Associates, Limited Partnership; Connecticut Bank of Commerce; Superior Products Distributors, Inc.; Town of Woodbridge; Ballou Painting and Restoration, Inc. a/k/a Ballou Painting Restoration, Inc.; Amity Card and Gift, LLC; A. Secondino Son, Inc.; and, Charles Farricelli; seeking a judgment of strict foreclosure of certain premises. The defendants did not object to the plaintiff's request for leave to amend the complaint, therefore the amended complaint is the operative complaint.[1]
According to the facts alleged in the complaint, by a mortgage note dated December 21, 1993, Madison promised to pay People's Bank, or other holder of the note, the principal sum of $22,000,000.00 with interest thereon as provided in the note. To secure the note, Madison executed a mortgage deed and security agreement, dated December 21, 1993, whereby it mortgaged to People's Bank a parcel of land known as Amity Shopping Center. As further security for the note, Madison executed a conditional assignment of leases and rentals in favor of People's Bank, dated December 21, 1993. The mortgage and assignment of leases were recorded in the appropriate municipal land records. On February 23, 1996, the note, mortgage and assignment of leases and rentals were assigned to the plaintiff. CT Page 7166
Count one alleges that Madison defaulted on the note and mortgage and, despite Benham's demand for payment, there is now due and owing the principal sum of $20,748,291.73, plus interest and late charges.[2]
Count two incorporates the allegations of count one relating to the execution of the note and mortgage and alleges that, as additional security for the note. Madison granted to People's Bank a security interest in all personal property used, owned and operated in connection with the mortgaged premises. Count two further alleges that Madison failed and neglected to pay periodic installments due under the note and that Benham has exercised its option to declare the entire principal balance and accrued interest due and payable in full.
Benham seeks a judgment of strict foreclosure of the mortgage or foreclosure by sale; immediate possession of the mortgaged premises; appointment of a receiver to collect rents and profits accruing from the mortgaged premises; the costs and expenses of this action, including reasonable attorney's fees; foreclosure of the security interest; and any other equitable relief that may pertain.
On July 12, 1996, Madison filed an answer, five special defenses and a three count counterclaim.
On July 26, 1996, Benham filed a motion to strike and a memorandum in support thereof. Benham moves to strike Madison's first, second, third, fourth, and fifth special defenses, and Madison's first and second counterclaims. On August 7, 1996, Madison filed a memorandum in opposition to Benham's motion to strike. This motion to strike is presently before the court.
The function of a motion to strike "is to test the legal sufficiency of a pleading." (Internal quotation marks omitted.)RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384,650 A.2d 153 (1994); Practice Book § 152. "[A] plaintiff can [move to strike] a special defense or counterclaim." Nowak v.Nowak, 175 Conn. 112, 116, 394 A.2d 716 (1978); Practice Book § 152(5).
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings" (Emphasis omitted.) Mingachos v. CBS,CT Page 7167Inc., 196 Conn. 91, 108, 491 A.2d 386 (1985) When ruling on a motion to strike, the court must construe the facts most favorably to the nonmoving party. Novametrix Medical Systems,Inc. v. The BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1992). "In ruling on a motion to strike the trial court is limited to considering the grounds specified in the motion."Meredith v. Police Commission, 182 Conn. 138 140 438 A.2d 27
(1980).
A. Defendant's First Special Defense
The first special defense claims that "[t]he second count of the plaintiff's complaint is stayed by operation of law, and in particular, by Sections 49-1 and 49-28 of the Connecticut General Statutes as made and Provided." Benham moves to strike Madison's first special defense on the ground that the alleged statutory stay is not proper defense under Practice Book § 164 Madison responds that the first special defense is proper under Practice Book § 164.
Practice Book § 164 defines the parameters of a valid special defense and provides in pertinent part that "[n]o facts may be proved under either a general or special denial except such as show that the plaintiff s statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged. . . ." "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." Grant v. Bassman, 221 Conn. 465 472-73604 A.2d 814 (1992). "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . ."Gurliacci v. Mayer, 218 Conn. 531, 546-47, 590 A.2d 914 (1991).
General Statutes § 49-1 provides in pertinent part that "[t]he foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure. . . ." General Statutes § 49-28
provides in pertinent part that "all other proceedings for the collection of a debt shall be stayed during the pendency of the foreclosure suit, and, if a deficiency judgment is finally rendered therein, the other proceedings shall forthwith abate." CT Page 7168
The second special defense asserts that count two is stayed by operation of law, it does not plead facts which show that the plaintiff has no cause of action. Therefore, Benham's motion to strike is granted as to Madison's first special defense.
B. Defendant s Second, Third, Fourth, and Fifth Special Defenses
Benham moves to strike the second third, fourth and fifth special defenses on two grounds. First, Benham claims that these special defenses are legally insufficient because they are not related to the making, validity or enforcement of the note or mortgage, and they rely entirely on factors outside the note and mortgage. Madison responds that the second, third, fourth, and fifth special defenses do attack the making validity and enforcement of the note or mortgage, and therefore, are valid special defenses. In addition, Benham moves to strike on the ground that Madison lacks standing to assert these defenses.
1. Proper Foreclosure Defenses
"At common law, the only defenses to an action of [foreclosure] . . . would have been payment, discharge, release or satisfaction; . . . or, if there had never been a valid lien." (Internal citation omitted.) Petterson v. Weinstock, 106 Conn. 436,441, 138 A. 433 (1927). In Petterson v. Weinstock, the Supreme Court recognized accident, mistake, and fraud as additional defenses available in a foreclosure action and noted that the recognition of these additional defenses to foreclosure represented "a fine example of the triumph of equitable principles over the arbitrary and unjust dogmas of the common law." Petterson v. Weinstock, supra, 106 Conn. 442. "Because a mortgage foreclosure action is an equitable Proceeding the trial court may consider all relevant circumstances to ensure that complete justice is done." Reynolds v. Ramos, 188 Conn. 316, 320,449 A.2d 182 (1982). "[A] trial court in foreclosure proceedings has discretion, on equitable considerations and principles, to withhold foreclosure or to reduce the amount of the stated indebtedness." Hamm v. Taylor, 180 Conn. 491 497 429 A.2d 946
(1980).
Accordingly trial courts have permitted defendants to raise several additional equitable defenses in foreclosure actions, including "equitable estoppel, CUTPA, laches breach of the implied covenant of good faith and fair dealing, tender of deed in lieu of foreclosure, refusal to agree to a favorable sale to a CT Page 7169 third party usury, unconscionability of interest rate, duress, coercion, material alteration, and lack of consideration."Teachers Insurance v. Broad and Hanrahan, Superior Court judicial district of Stamford-Norwalk at Stamford, Docket No. 132304 (June 28, 1995, Hickey, J.); Berkeley Federal Bank Trust v.Phillips, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 317957 (January 23, 1996, West, J.)
Nonetheless, there are limits as to which equitable defenses and counterclaims may be raised in a foreclosure action. Special defenses to foreclosure "are proper only when they attack the making, validity, or enforcement of the note or mortgage, rather than some act or procedure of the mortgagee." National MortgageCo. v. McMahon, Superior Court, judicial district of New Haven at New Haven, Docket No. 349246 (February 18, 1994, Celotto, J.);Berkeley Federal Bank Trust v. Phillips, supra. "Courts have not been receptive to foreclosure defendants who have asserted defenses and counterclaims based on factors outside of the note or mortgage." Shoreline Bank Trust v. Leninski, Superior Court, judicial district of New Haven at New Haven, Docket No. 335561 (March 19, 1993, Celotto, J.). "The rationale behind this is that counterclaims and special defenses which are not limited to the making validity or enforcement of the note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action National Mortgage v. McMahon, supra; DimeSavings Bank v. Albir, Superior Court, judicial district of Stamford-Norwalk, Docket No. 132582 (February 7, 1995, D'Andrea, J.).
a. Defendant's Second Special Defense
The second special defense claims that" [t]he transaction referenced in the plaintiff's complaint is incidental to the transaction which violates the antitrust provision of Connecticut law, as made and provided, and is unenforceable."
The second special defense asserts that the note and mortgage are unenforceable because they are incidental to a transaction which violates Connecticut antitrust law. Essentially, Madison is claiming that the note and mortgage are unenforceable because they are related to a separate agreement which allegedly violates Connecticut antitrust law. Benham counters that this separate agreement, to which the note and mortgage are allegedly incidental, is a certain "Restriction Agreement," which was CT Page 7170 entered into on May 13, 1992 by Madison and the Stop Shop Companies. (Memorandum of Law in Support of Plaintiff's Motion to Strike, p. 6).
In Bristol Savings Bank v. Miller, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 512558 (October 19, 1992, Aurigemma, J.), Miller, a foreclosure defendant, filed two special defenses based upon interrelated loans and business dealings between the parties. The court struck Miller's special defenses because they did "not address the making, validity or enforcement of the notes and mortgages which are the subject of the complaint. Rather they allege the nonperformance, breach, and misrepresentation with respect to agreements and dealings which are separate from the notes and mortgages referred to in the complaint." Id.
The motion to strike is granted as to the second special defense because the second special defense does not attack the making, validity, or enforcement of the note or mortgage, and because it is based on an agreement separate from, and outside of the note or mortgage. See Bristol Savings Bank v. Miller, supra;National Mortgage Co. v. McMahon, supra, ("[s]pecial defenses to foreclosure "are proper only when they attack the making, validity or enforcement of the note or mortgage, rather than some act or procedure of the mortgagee."); Shoreline Bank Trust v.Leninski, supra, ("[c]ourts have not been receptive to foreclosure defendants who have asserted defenses and counterclaims based on factors outside of the note or mortgage.").
b. Defendant's Third Special Defense
The third special defense states that "[t]he plaintiff is a wholly-owned subsidiary of People's Bank, which is the plaintiff's predecessor in regard to the instruments referenced in its complaint. The plaintiff's Predecessor, People's Bank, knowingly entered into the transactions referenced in its complaint, which are in furtherance of a restraint of trade in favor of the Stop Shop Companies, and accordingly are unenforceable and against the antitrust provisions of the Connecticut General Statutes as made and provided."
The third special defense claims that the note and mortgage are unenforceable because the plaintiff's predecessor participated in separate activities that violate Connecticut CT Page 7171 antitrust law. The motion to strike the third special defense is granted for the same reasons set forth with respect to the second special defense.
c. Defendant's Fourth Special Defense
The fourth special defense states that "[f]or the reasons set forth in the Second and Third Special Defenses, the plaintiff and its predecessor lack clean hands in which to maintain said foreclosure."
This court has held that the defense of unclean hands is properly stricken where the allegations of unclean hands do not address the making, validity or enforcement of the note or mortgage, or where the allegations address a behavior of the mortgagee, or factors outside of the note or mortgage. NationalMortgage Co. v. McMahon, supra; see also Great Country Bank v.Kiely, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 047460 (October 19, 1995, Curran, J.). Furthermore, "[t]he defense of unclean hands to a mortgage foreclosure has generally been disallowed in this state."Mechanics Farmers Savings Bank, FSB v. Delco Development Co.,43 Conn. Sup. 408, 420, 656 A.2d 1075 aff'd, 232 Conn. 594,656 A.2d 1034 (1995); Berkeley Federal Bank Trust v. Phillips,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 317957 (January 23, 1996 West, J.).
In the present case, the allegations of unclean hands are based on the alleged antitrust violations. These alleged violations are separate from, and outside of, the note and mortgage. The defense of unclean hands does not address the making, validity or enforcement of the note or mortgage itself, instead, it relies on factors outside of the note or mortgage. Therefore, the motion to strike the fourth special defense is granted. See National Mortgage Co. v. McMahon, supra; GreatCountry Bank v. Kiely, supra.
d. Defendant's Fifth Special Defense
The fifth special defense states that "[f]or the reasons set forth in the Second and third Special Defenses, the plaintiff and its predecessor are guilty of violating the Connecticut Unfair Trade Practices Act ("CUTPA") C.G.S. § 42-110a, et seq., as made and provided." CT Page 7172
CUTPA is a valid defense in a foreclosure action. FirstFederal Savings and Loan, Rochester v. Nielsen, Superior Court, judicial district of New Haven at New Haven, Docket No. 326502 (September 16, 1992, Celotto, J.); Hans L. Levi, Inc. v. Kovacs,
Superior Court, judicial district of Litchfield, Docket No. 056101 (November 4, 1991, Pickett, J.). However, the alleged CUTPA violation must still go to the making, validity or enforcement of the note or mortgage. Berkeley Federal Bank Trustv. Rotko, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 318648 (January 25 1996, West J.).
In the present case, Madison's CUTPA defense arises out of Benham s alleged antitrust violations. The fifth special defense does not address the making, validity, or enforcement of the note or mortgage; rather it is premised on factors outside of the note and mortgage. Accordingly, the motion to strike fifth special defense is granted
2. Standing
Benham's second ground for moving to strike Madison's second, third fourth and fifth special defenses is that Madison lacks standing to assert these antitrust based special defenses. In the present case, however, this court need not determine whether Madison has standing to assert its antitrust based special defenses and counterclaims because Madison's second, third, fourth, and fifth special defenses and first and second counterclaims fail because they do not attack the making, validity, or enforcement of the note or mortgage.
When construing Connecticut antitrust laws, Connecticut courts must look to interpretations by federal courts of the federal antitrust laws. General Statutes § 35-44b; Elida,Inc. v. Harmor Realty Corp., 177 Conn. 218, 226-27, 413 A.2d 1226
(1979). "A fundamental requirement of a viable antitrust complaint is the allegation of facts that the plaintiff has suffered antitrust injury and thus has standing to assert an antitrust claim (Internal quotation marks omitted.) WaterfordParkade, Inc. v. Picardi, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No 539883 (March 11, 1996, Aurigemma, J.). An antitrust injury is an "injury of the type the anti-trust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful. The injury should reflect the anti-competitive effect either of the violation or of the anti-competitive acts made possible by the CT Page 7173 violation. It should, in short be the type of loss that the claimed violations . . . would be likely to cause." Zenith RadioCorp. v. Hazeltine Research Inc., 395 U.S. 100, 125 (1969). InAssociated General Contractors of California, Inc. v. CaliforniaState Council of Carpenters, 459 U.S. 519, 535-45 (1983), the Supreme Court expressly identified the factors to be used in determining whether a party has standing to raise federal antitrust claims. These factors include "(1) the causal connection between the antitrust violation and the harm to the plaintiff and whether that harm was intended to be caused; (2) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market; (3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative; (4) the potential for duplicative recovery or complex apportionment of damages; and (5) the existence of more direct victims of the alleged antitrust violations. Southaven Land Co., Inc. v. Malone Hyde, Inc., 715 F.2d 1079, 1085 (6th Cir. 1983), citingAssociated General Contractors, supra. In Blue Shield of Virginiav. McCready, 457 U.S 465 483-84 (1982), the Supreme Court held that "[a]lthough [the plaintiff] was not a competitor of the conspirators, the injury [plaintiff] suffered was inextricably intertwined with the conspirators sought to inflict on [the relevant] market."
In Waterford Parkade, Inc. v. Picardi, supra, Judge Aurigemma applied the factors set forth in Southaven and McCready, and after an extensive review of the pertinent federal case law held that a land developer did not have antitrust standing to sue a supermarket for alleged antitrust violations. In Southaven LandCo., Inc. v. Malone Hyde, Inc., supra, 715 F.2d 1079, the court held that an owner and lessor of commercial property (Southhaven) leased to a grocery store did not have standing to charge a competing grocery store with violating the antitrust laws. The court held that Southaven did not have antitrust standing because "[it] is not a consumer, customer, competitor or participant in the relevant market or otherwise inextricably intertwined with any such entity. Its injury is not sufficiently linked to the pro-competitive policy of the antitrust laws." Id. 1087. InRosenberg v. Cleary, Gottlieb, Steen and Hamilton, 598 F. Sup. 642
(1984), the court held that a land developer (Cherry Pike) did not have antitrust standing despite its claim that the relevant market was not the grocery market, but instead the construction market, because Cherry Pike's alleged injuries as a builder are "no more than a tangential by-product of an antitrust violation CT Page 7174 in the grocer market" (Internal quotation marks omitted.) Id. 645.
Conversely, in Serfecz v. Jewel Food Stores, 67 F.3d 591 (7th Cir 1995), the court held that a shopping mall owner (Serfecz) did have standing to bring an antitrust action against a grocery store chain because Serfecz had "allege[d] that the defendants had conspired to restrain trade and monopolize sales in the retail shopping center market Here, the district court quite correctly determined that the plaintiffs, who are direct participants in this market, alleged an injury that is sufficiently direct to give them standing." Id. 599.
C. The Defendant's First and Second Counterclaims
Benham moves to strike Madison's counterclaims on two grounds. First, Benham claims that Madison lacks standing to assert these antitrust based counterclaims.[3] Second, Benham claims that these antitrust based counterclaims do not arise out of the transaction which is the subject of Madison's action.
Practice Book § 116 provides in pertinent part, "[i]n any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction . . . which is the subject of the plaintiff's complaint. . . ." "[A] counterclaim is a cause of action existing in favor of the defendant against the plaintiff and on which the defendant might have secured affirmative relief had he sued the plaintiff in a separate action." (Citation omitted.) Wallingford v. Glen ValleyAssociates, Inc., 190 Conn. 158, 160, 459 A.2d 525 (1983). "[A] counterclaim must arise out of the transaction which is the subject of the plaintiff's complaint." Id. When determining whether claims made in the complaint and a the counterclaim arise out of the same transaction, a court must consider whether a substantial duplication of effort would result if each claim was tried separately. Bristol Savings Bank v. Miller, supra; citingWallingford v. Glen Valley Associates, Inc., supra.
1. Defendant's Counterclaim. First Count
Count one of the counterclaim alleges that Madison People's Bank, and Stop Shop Companies entered into an agreement whereby Stop Shop sought to limit business competition and that this agreement violated Connecticut antitrust laws. Count one also CT Page 7175 alleges that as a result of this agreement, the note and mortgage are void as against public policy and Madison is entitled to a refund of the money it has paid to People's Bank under the note and mortgage.
Benham's complaint arises out of the December 1993 note and mortgage. The first count of Madison's counterclaim arises out of the alleged May 1992 Restriction Agreement. The first count of the counterclaim alleges antitrust violations on the part of Benham in connection with an agreement which is an entirely separate agreement from the note and mortgage. Accordingly, the motion to strike count one of the counterclaim is granted because it does not arise out of the same transaction that is the subject of Benham's complaint. See Union Trust v. Hamilton Branford LTD.,
Superior Court judicial district of New Haven at New Haven, Docket No. 325651 (August 27, 1993, Celotto, J.).
2. Defendant's Counterclaim Second Count
Count two of the counterclaim incorporates the allegations of count one and alleges that Benham has violated the Connecticut Unfair Trade Practices Act by acting in an immoral, oppressive, unethical, and unscrupulous manner, which has caused substantial injury to consumers, competitors, and other businessmen.
CUTPA "is the basis for a claim for damages and so [is] properly . . . pleaded as a counterclaim." GE Capital Mortgage v.Klett, supra. However, the CUTPA-based counterclaim must still arise from the same transaction that gives rise to the complaint The second count of the counterclaim, like the first count, is premised on a transaction (the Restriction Agreement) which is separate from the transaction (the note and mortgage) which is me basis of Benham s complaint Accordingly the motion to strike the second count of the counterclaim is granted because the complaint and counterclaim do not arise out of the same transaction. SeeUnion Trust v. Hamilton Branford LTD., supra.
CONCLUSION
Based upon the above reasoning, the motion to strike is granted as to first, second, third fourth, and fifth special defenses and the motion to strike is granted as to the first and second counterclaims as well.
Donald W. Celotto, J.T R. CT Page 7176