[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Frederick Lagosh, the highest bidder at a foreclosure sale ordered by this court, moves for a return of his deposit of $62,500.00 paid to the Committee after he refused to consummate the sale.
The facts are as follows:
The plaintiff American Savings Bank, by complaint dated November 8, 1999, initiated this action to foreclose its second mortgage on property of the defendants Steven and Krista Appletree located at 12 John Steele Road, Farmington, Connecticut. During the pendency of the action, on February 15, 2000, the defendant Appletrees filed Chapter 7 bankruptcy proceedings in the United States Bankruptcy Court for the District of Connecticut. That court lifted the stay of proceedings, under11 U.S.C. § 362, on the condition that the foreclosure judgment be by sale. The court entered a judgment of foreclosure by sale on June 19, 2000 in which it found the debt to be $162,195.47, the fair market value of the property to be $625,000.00, required a deposit at the sale of $62,500.00, and appointed Attorney Kenneth L. Shluger as Committee. Shortly after his appointment Attorney Shluger prepared a single-page document to distribute to persons interested in purchasing the property at the sale. The document was entitled:
 FARMINGTON PUBLIC AUCTION FORECLOSURE BY SALE
It stated Attorney Shluger had been appointed as Committee of Sale and authorized to sell the property, the address of the property, the date of the sale as noon August 12, 2000 and in a paragraph headed Conditions ofSale said the following:
 This property will be sold in `as is' condition, without warranties . . . subject to the approval of the Superior Court. The property will be sold free and clear of the mortgage herein being foreclosed and all claims subsequent in right thereto, the holders of which are bound by this action, but subject to all prior encumbrances of record. Immediately following the sale, the successful bidder will be required to deposit with the undersigned Committee the sum of CT Page 2412 $62,500.00 by certified or cashier's check and shall be required to execute a Bond for Deed with the said Committee. The balance of the purchase price shall be paid within thirty (30) days from the Court approval of sale and upon tender of Committee Deed. If said sale is not approved, the deposit shall be returned. Otherwise, said deposit shall be forfeited in the event that the successful bidder fails to close after the sale is confirmed by the Court.
The next paragraph, entitled, Description of Property: describes the property containing 7.742 acres on which is located a 2-1/2 story brick, stone and stucco, single family majestic home containing 4 bedrooms, lap pool, Jacuzzi, gym, 4-car garage and other amenities. In this paragraph the document states that the property was appraised on May 13, 2000 for $625,000.00 and on June 28, 2000 for $630,000.00. It then states:
 "The property will sell subject to town taxes of $46,007.91 and subject to the first mortgage to Mechanics Savings Bank (now Webster) in the approximate amount of $216,503.11 plus interest after August 12, 2000. The second mortgage to American Savings Bank being foreclosed is in the approximate amount of $170,000.00 plus interest from June 26, 2000."
Mr. Lagosh, who lived in the neighborhood of the subject property, contacted Attorney Shluger and received from him the above notice about a week before the sales date, which he said he read. Lagosh testified he asked Attorney Shluger what the proceeds of the sale would be used for and the attorney said to pay prior liens. This court does not believe Lagosh on this point.
At the auction on August 12, 2000 Attorney Shluger had available for distribution to potential bidders many copies of the aforesaid notice. Attorney Shluger testified that he read the notice including the provision that the property was subject to taxes of $46,007.91 and to a first mortgage to Mechanics Savings Bank in the approximate amount of $216,503.11. David Surowiec, a bidder at the auction, testified, however, that Attorney Shluger did not read the entire notice to bidders but did indicate that there were "outstanding taxes to be paid and liens to be paid". He does not recall Attorney Shluger stating the amounts of these prior encumbrances. Attorney Anthony Novak, the bankruptcy trustee, testified that Attorney read the provision of the notice to the effect that the property would be sold free and clear of the mortgage being foreclosed and of all claims subsequent in right thereto but CT Page 2413 subject to all prior encumbrances of record. Attorney Joel Grafstein, attorney for the homeowners, testified that Attorney Shluger read from the notice but not the entire notice and that the proceeds from the sale would pay the foreclosing bank mortgage and subsequent lien holders. He testified Attorney Shluger did not refer to the first mortgage at the auction but did refer to prior encumbrances. The successful bidder, Frederick Lagosh testified that Attorney Shluger never said that the property was subject to a prior mortgage or ever stated the amount of that mortgage. Mr. James Cassidy, the engineer who accompanied Lagosh to the auction, testified that he did not hear Attorney Shluger read the notice nor make any reference to amounts in the notice.
From this conflict in the testimony the court finds that, prior to the start of the auction, Attorney Shluger did not read the notice in its entirety but did state that the property would be sold free and clear of the mortgage being foreclosed and all claims subsequent in right thereto, and subject to town taxes and to prior encumbrances without stating the amounts of those prior liens.
Eight individuals presented to the Committee the requisite bank check of $62,500.00 as a deposit. After the bidding commenced, plaintiff American Savings Bank bid to the amount of its debt of $179,000.00, and thereafter two bidders, David Surowiec and Mr. Lagosh engaged in a spirited bidding duel at increments of $5,000.00 until $380,000.00, when Mr. Surowiec stopped and Lagosh made the final bid of $385,000.00.
Thereupon Attorney Shluger asked Mr. Lagosh to sign a Bond for Deed at that price. Attorney Shluger testified that he presented the Bond for Deed to Lagosh who signed it and Shluger then asked Attorney Maria Tougas, attorney for plaintiff American Savings Bank, and another person to be witnesses to the signature. Just as Attorney Tougas was to take Lagosh's acknowledgment, Lagosh asked a question which caused everybody to stop. Specifically Lagosh asked whether his bid covered all expenses which Attorney Shluger understood to mean the first mortgage and taxes. Attorney Shluger testified he was "sort of startled" but said no, the bid did not cover such expenses and Lagosh said he understood that it did. At that point Attorney Shluger conferred with Attorneys Novak, Tougas and Grafstein, who he considered having a good depth of real estate and banking expertise, and discussed whether Attorney Shluger should return the deposit to Mr. Lagosh. After that conference Attorney Shluger stated that he would not return the deposit to Lagosh but would present the facts to the court and leave it to the court to decide.
Mr. Lagosh has an entirely different version of those events. He testified that before he signed the Bond for Deed he raised the question whether or not his bid satisfied the first and second mortgage. "There CT Page 2414 was a lot of confusion. He [Attorney Shluger] said: yes. But then he said: Wait a minute. And he went to talk to a representative of the bank foreclosing [sic] which happened to be Maria [Tougas] sitting there and then she came back. they discussed, — they came back and in front of them she [Tougas] said: "yes'. I signed — like Ken [Shluger] wanted me to sign right there and he said: yes. Then she [Tougas] said: Wait a minute, let me talk to someone else. Then she went over to a corner with a group of people I think from the other bank . . . they came back shortly and I'm holding this document still that I just signed that they said: yes. Then they said: no, it doesn't. Then I said. — Ken asked me if I wanted to withdraw my bid which I said: yes, I do."
Mr. Cassidy, the engineer retained by Lagosh, testified after Lagosh won the auction at $385,000.00 and was walking out of the room to sign the Bond for Deed, a neighbor told Lagosh that the first mortgage had to be paid after he obtained the property for $385,000.00. At that Mr. Lagosh asked for a clarification from Attorney Shluger. Attorney Shluger stated he thought that was the case but wanted to get clarification. He then conferred with Attorney Maria Tougas and Attorney Tougas stated, that if there was any additional proceeds after the second mortgage was paid it would go to pay the first mortgage. Mr. Lagosh then signed the Bond for Deed. Thereafter Attorney Tougas and the attorney from Mechanics Savings Bank, the first mortgagee, had a further discussion and they came back and said, "They had a clarification on the distribution of funds. The $385,000.00 would go to satisfy the second mortgage. Any additional proceeds after that would go to pay creditors below the second mortgage. The first mortgage would still have [sic] to be paid."
The Bond for Deed, signed by Lagosh but not read by him, contains the provision that "if said buyer shall fail to make the several payments or any of them as hereinbefore stated, the said buyer shall forfeit all claims to the premises described herein and all monies paid in pursuance of this agreement."
This sale was confirmed by the court but after Mr. Lagosh repudiated the contract, a new sale was ordered for September 23, 2000. At the second sale only two bidders registered and the highest bidder was $179,000.00. That sale was approved by the court on November 6, 2000.
It is well established that a foreclosure action constitutes an equitable proceeding. Harbor Landing Development Corporation v. Herman,27 Conn. App. 98, 101 (1992); People's Bank v. Letendre, 57 Conn. App. 645,646 (2000). "In an equitable proceeding, the trial court may examine all relevant factors "to ensure that complete justice is done.' Reynolds v.Ramos, 188 Conn. 316, 320 (1982). "The determination of what equity requires in a particular case, the balancing of the equities, is a matter CT Page 2415 for the discretion of the trial court.' Kakalik v. Bernard, 184 Conn. 386,395 (1981)."
In City Corp Mortgage, Inc. v. Burgos, 227 Conn. 116 (1993) the issue was the return of the deposit to a successful bidder in a foreclosure by sale. The facts were that the Bond for Deed executed after the sale provided for a closing within thirty days, but as a consequence of numerous delays incurred, in part, as a result of an appeal by one of the parties, the sale was delayed 137 days after approval of the sale. In that interim the highest bidder had lost his financing to effectuate the sale. The Supreme Court noted that a committee of sale functions as an arm of the court in a judicial sale and its failure to close twenty-seven days after the Appellate Court had dismissed the appeal unjustly prejudiced the highest bidder. In determining that the trial court had abused its discretion by refusing to order the return of the deposit, the Supreme Court quoted with approval the case of Willimantic Savings LoanAssn. v. Boudreau, Appellate Session of the Superior Court, No. 655 (February 2, 1979) 5 C.L.T. No. 7, p. 11, as follows: "When a court order respecting the conduct of a judicial sale is not complied with, the court should scrutinize the transaction very carefully to assure itself that the sale has been conducted fairly and impartially and if any irregularity has occurred, that no interested party has been injured by it. If any likelihood of injury is shown, it would be an abuse of discretion for the trial court to approve the sale."
As indicated in the statement of facts above, the notice to bidders contained in the paragraph entitled "Conditions of Sale" the provision that the property was sold free and clear of the mortgage herein being foreclosed but "subject to all prior encumbrances of record," and in the paragraph entitled "Description of Property" the provision that "The property will sell subject to town taxes of $46,007.91 and subject to the first mortgage to Mechanics Savings Bank . . . in the approximate amount of $216,503.11, plus interest after August 12, 2000."
On its face the notice is unclear because the reference to the exact amount of the first mortgage is in the paragraph entitled "Description of Property," not in the paragraph entitled "Conditions of Sale".
Moreover this court finds that the Committee did not read at the start of the bidding the entire notice. Specifically it did not read the provisions in the notice under "Description of Property" relating to the first mortgage and its amount. Connecticut Foreclosures, Caron, Dennis R. Third Edition 1997, p. 176, in the section on conducting foreclosure sales, states:
 "Obviously, the auction should be preceded by CT Page 2416 announcement fully disclosing the terms and conditions of the sale. The easiest means of avoiding an oversight is for the Committee simply to read aloud a notice prepared for distribution. So doing ensures that the successful bidder will not be able to use a Committee's inadvertent omission of an item as a means of backing out of the sale."
The same authority states with respect to foreclosure sales of second mortgages the following: (p. 189)
 "Since the foreclosure of a mortgage or lien can be binding only on subsequent encumbrances, a first mortgagee cannot be affected by the foreclosure of subsequent interests. Thus, any sale ordered by a judgment in such action must be subject to the prior encumbrance. A Committee appointed to sell the property should exercise extreme care to ensure that all participants of the sale are fully informed about the nature and amount of the prior encumbrances subject to which the sale is to occur. Failure to do so inevitably leads to confusion and the occasional high bidder who mistakenly bids far in excess of the value of the property."
Here the court finds that the notice to bidders was, on its face, confusing, the Committee did not read the notice completely at the auction, and specifically failed to clearly reveal to bidders the existence and the amount of the first mortgage that would not be discharged by the sale and would remain a first lien on the property after the foreclosure sale.
After the bidding concluded with Lagosh as the highest bidder, there is a conflict of testimony as to when, relative to his signing the Bond for Deed, he raised the matter of the proceeds of the sale applying to the first mortgage. The Committee, Attorney Shluger, testified that Lagosh signed the Bond for Deed and then, while the execution formalities were continuing, he raised the matter of whether or not his purchase price included satisfaction of the first mortgage. Lagosh testified that before he signed the Bond for Deed he asked Attorney Shluger whether or not the sale proceeds satisfied the first and second mortgage, Shluger said, "Yes," but "there was a lot of confusion," and after a conference between Shluger and Attorney Tougas, Tougas said: "Yes". Whereupon Lagosh signed the Bond for Deed without having read it. Later the lawyers came back, Lagosh testified, and said the purchase price did not cover the first and second mortgage and Lagosh then sought to withdraw his bid. Lagosh's CT Page 2417 testimony is confirmed by Cassidy.
If Lagosh's and Cassidy's testimony are to be believed, then statements by Attorneys Shluger and Tougas regarding the application of the proceeds of the sale to the first mortgage constitute fraud or misrepresentation that would require this court to return the deposit to Lagosh. However, it is such an elemental principle of law that the foreclosure of a second mortgage cannot affect the first mortgage that this court does not believe that either Attorney Shluger or Tougas could have or, in fact, did represent to Lagosh that the proceeds of the sale would pay the first mortgage.
The court finds that Mr. Lagosh signed the Bond for Deed, but while the Bond for Deed was being witnessed and before it was acknowledged, he indicated his confusion about the first mortgage.
A Bond for Deed, being a simple contract for the sale and purchase of land, requires that it be in writing, but does not, like a conveyance of land, require that it be witnessed and acknowledged in the manner provided for in General Statutes Section 33-5. Thus, Lagosh's signing the Bond for Deed, even without an acknowledgment of his signature, created a valid agreement between him and the Committee. Moreover, even if Lagosh signed the agreement by mistake, the contract cannot be avoided by his unilateral mistake where that mistake was not caused by the other party's fraud or misrepresentation. Gebbie v. Cadle Co., 49 Conn. App. 265,276-77 (1998). Here the court finds no fraud or misrepresentation by the Committee or plaintiff's attorney.
Nevertheless, the Committee, as a representative and agent of the court, had a high responsibility to conduct the sale fairly. Clearly Lagosh indicated during the formalities of the execution of the Bond for Deed that he was acting under a mistaken awareness of whether or not his purchase price covered the first mortgage. Under such circumstances the Committee, as the officer of the court, had to be certain that Lagosh's action in signing the Bond for Deed was his free act and deed and done with awareness that the foreclosure did not affect the first mortgage. When during the execution of the Bond for Deed Lagosh indicated his confusion, the Committee should have allowed him to withdraw his bid, reopened the sale, explaining clearly to all present the significance of the first mortgage, and re-continued the auction.
Not only the Committee as an agent of the court but also the court itself in a foreclosure proceeding must act in accordance with equitable principles of fair dealing. As stated in Dime Savings Bank of New York v.Grisel, 36 Conn. App. 313, 319 (1994), "The court must exercise its discretion and equitable powers with fairness, not only to the CT Page 2418 foreclosing mortgagee, but also to subsequent encumbrancers and the owners." Certainly, it must also be added, it must act with fairness to the bidders at the sale.
The court determines it is contrary to equitable principles of fairness to cause Lagosh to lose his entire deposit of $62,500.00 under the circumstances of this case when it finds the notice to bidders was unclear, the Committee at the start of the auction failed to read the provision stating the existence and amount of the first mortgage and explain its significance to the bidders, and Lagosh revealed his mistaken but honest confusion over whether or not the proceeds of the sale went to satisfy the prior first mortgage during the execution of the Bond for Deed and before his signature had been acknowledged.
However, Lagosh should not get off scot free. His negligence in bidding without realizing the true significance of the first mortgage, particularly when he had received and read the notice to bidders, caused the plaintiff bank and creditors of the defendant homeowner considerable additional expense by reason of his backing out of the Bond for Deed and the court having to order a second sale. The court will allow the parties to present evidence of these expenses including accrued interest on the mortgage being foreclosed, additional expenses of the Committee for advertising and other purpose, and additional attorneys' expenses of the plaintiff bank and defendant bankruptcy trustee. Federal Deposit InsuranceCorp. v. Masone, No. 109292, Judicial District of Waterbury (West, J., March 28, 1995). After a hearing, this court will order an appropriate deduction from the deposit be made for those expenses and that the balance of the deposit be paid over to Lagosh.
Robert Satter State Judge Referee