[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Federal National Mortgage Association, ("plaintiff'), brought a foreclosure action against the defendants, Robert B. Jessup and Donna L. Jessup, ("Jessups"), Beverly L. Snyder, ("defendant"), and the United States of America, Department of Treasury, Internal Revenue Service. The subject property, ("property"), is located at 60 Silvermine Avenue, Norwalk, Connecticut, and is owned and in the possession of the defendant. Moreover, an $85,000.00 loan was allegedly advanced to the Jessups by Progressive Consumers Federal Credit Union, ("Progressive"), a predecessor in interest to the plaintiff and the loan originator. The property was security for the loan.
By way of background, Progressive assigned the mortgage to Foster Mortgage Corporation, ("Foster"), who then assigned the mortgage to the plaintiff in or about July of 1994. The plaintiff now alleges that there is an unpaid balance of $83,630.95, plus interest from April 1, 1992 to present, exclusive of late charges and collection costs. As a consequence, the note has allegedly been in default as of May 1, 1992. The defendant now files an answer, ten special defenses and six counterclaims in response to the complaint. At issue, is the plaintiffs motion to strike the defendant's special defenses and counterclaims. As required by Practice Book § 10-42 both parties have submitted memoranda in support of their respective positions. Each special defense and counterclaim will now be addressed individually by the court.
"The motion to strike . . . replaced the demurrer in our practice. Its function, like that which the demurrer served, is to test the legal sufficiency of a pleading." (Internal quotation marks omitted.) RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 384, 650 A.2d 153 (1994). "[A] plaintiff can [move to strike] a special defense. . . ." Nowak v. Nowak, 175 Conn. 112,116, 394 A.2d 716 (1978); see also Connecticut National Bank v.Voog, 233 Conn. 352, 354-55, 659 A.2d 172 (1995); Girard v.Weiss, 43 Conn. App. 397, 417, 682 A.2d 1078, cert. denied,239 Conn. 946, 686 A.2d 121 (1996). "In . . . ruling on the . . . motion to strike, the trial court recognized its obligation to take the facts to be those alleged in the special defenses and to construe the defenses in the manner most favorable to sustaining their legal sufficiency." Connecticut National Bank v. Douglas,221 Conn. 530, 536, 606 A.2d 684 (1992). "The granting of a motion to strike a special defense is not a final judgment and is therefore not appealable." Mechanics Savings Bank v. TownleyCT Page 10573Corp., 38 Conn. App. 571, 573, 662 A.2d 815 (1995).
Moreover, "a counterclaim is a cause of action existing in favor of the defendant against the plaintiff and on which the defendant might have secured affirmative relief had he sued the plaintiff in a separate action. . . . A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." (Citations omitted; internal quotation marks omitted.) Fairfield Lease Corp.v. Romano's Auto Service, 4 Conn. App. 495, 496, 495 A.2d 286
(1985).
The traditional defenses in a foreclosure case are generally limited to payment, discharge, release, satisfaction or invalidity of a lien. Petterson v. Weinstock, 106 Conn. 436, 441,138 A. 433 (1927). "In recognition that a foreclosure action is an equitable proceeding, courts have allowed mistake, accident, and fraud . . . equitable estoppel . . . CUTPA, laches, breach of the implied covenant of good faith and fair dealing, tender of deed in lieu of foreclosure and a refusal to agree to a favorable sale to a third party to be pleaded as special defenses. . . . Other defenses which have been recognized are usury . . . unconscionability of interest rate . . . duress, coercion, material alteration, and lack of consideration. . . . Additionally, under certain circumstances, inconsistent conduct on the part of the mortgagee may be deemed as a waiver of a right to accelerate the debt. . . . These special defenses have been recognized as valid special defenses where they are legally sufficient and address the making, validity or enforcement of the mortgage and/or note. . . . The rationale behind this is that . . . special defenses which are not limited to the making, validity or enforcement of the note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action." (Citations omitted; internal quotation marks omitted.) Berkeley Federal Bank Trust v. Rotko, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 318648 (January 25, 1996, West, J.); see also Kahle v. Eagle, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 159361 (December 19, 1997, Hickey, J.) (also discussing the applicable standard for special defenses in foreclosure cases).
In terms of counterclaims, Practice Book § 10-10 provides in relevant part that "any defendant may file counterclaims against any plaintiff . . . provided that each counterclaim. CT Page 10574 arises out of the transaction or one of the transactions which is the subject of the plaintiffs complaint. . . ." "An analysis of those cases recognizing . . . counterclaims [to foreclosure actions] suggest that they are proper only when they . . . attack the note itself, rather than some act or procedure by the mortgagor. . . . Courts have not been receptive to foreclosure defendants who have asserted defenses and counterclaims based on factors outside of the note or mortgage . . ." (Citations omitted; internal quotation marks omitted.) Source One v.Dziurzynski, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 145337 (May 22, 1996,Hickey, J.) (17 Conn. L. Rptr. 29, 30). Moreover, "[t]he test is whether judicial economy, avoidance of multiplicity of litigation, and avoidance of piecemeal disposition of what is essentially one action are thwarted rather than served by filing of a [counter] claim. . . ." (Citation omitted; internal quotation marks omitted.) Id.
First Special Defense
The first special defense sounds in unclean hands. The plaintiff argues that this is not a recognized defense to a foreclosure action and that even if this court recognizes unclean hands as a valid defense, sufficient facts have not been alleged by the defendant. The defendant argues in opposition that sufficient facts have been alleged because the doctrine of unclean hands is being applied to Progressive, the loan originator, and that Progressive inter alia failed to provide the defendant with her own impartial counsel. Integral to the defendant's argument is that the plaintiff is subject to the same defenses that could have been raised against Progressive had Progessive still owned the note and mortgage.
As a preliminary matter the plaintiff is subject to any defenses applicable against the assignor and loan originator, Progressive. See Reynolds v. Ramos, 188 Conn. 316, 319-20 n. 5,449 A.2d 182 (1982) (finding that "the plaintiff has not asserted any independent right to assume the special status of a holder in due course and therefore his taking of the note after default subjected him to all defenses applicable against the assignor"). General Statutes § 42a-3-302 (2) provides in pertinent part that the holder in due course of an instrument must take "(iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series." CT Page 10575 Here, at the time of assignment, in or about July of 1994, the plaintiff was allegedly on notice that the note and mortgage were overdue as of 1992. Accordingly, the plaintiff takes the note and mortgage not as a holder in due course and subject to any defenses available against Progressive.
Now turning to the substance of the first special defense "the doctrine of unclean hands has generally been disallowed as a special defense in a foreclosure action." Berkeley Federal Bank Trust v. Rotko, supra, Superior Court, Docket No. 318648. Connecticut does, however, allow the defense of unclean hands in foreclosure cases where the defense relates to the making, validity or enforcement of the note. See Boretz v. Segar,124 Conn. 320, 323, 199 A. 548 (1938) (finding the defense of unclean hands valid where it directly related to the validity and subsequent enforcement of a deed). Here, the fact that the defendant is an elderly lady who was allegedly provided with counsel with interests directly opposed to hers, as her counsel also acted as Progressive's counsel, goes to the making and subsequent validity of the mortgage. Accordingly, under these exceptional circumstances the plaintiffs motion to strike the first special defense is denied.
Second Special Defense
The second special defense provides in pertinent part that "[t]he plaintiff is barred from enforcing the terms of the note and mortgage it recites because the defendant was induced by fradulent, negligent and/or innocent misrepresentations, on which she relied to her detriment, to execute those instruments." The plaintiff argues that this special defense should be stricken because it fails to allege the necessary elements of fraudulent, negligent and/or innocent misrepresentations. The defendant argues in opposition that it has alleged sufficient facts.
In addition to being recognized as a valid special defense in a foreclosure case, sufficient facts have been alleged by the defendant to state a cause of action for fraudulent misrepresentation. See Berkeley Federal Bank Trust v. Rotko,
supra, Superior Court, Docket No. 318648 (enumerating fraud as a valid special defense in a foreclosure case). The essential elements of an action in fraud, as we have repeatedly held, are: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; CT Page 10576 and (4) that the latter did so act on it to his injury." Millerv. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811 (1981). Here, the defendant has properly alleged the following: that the plaintiff had promised her an attorney when in fact it had no intention of providing her with an attorney; that the plaintiff in essence assured the defendant an attorney so that the transaction would go forward; and that as a result of the plaintiff not providing her with an attorney she relied on Progressive's attorney for advice to her detriment. Accordingly, the plaintiffs motion to strike the special defense as to fraudulent misrepresentation is denied.
Negligent misrepresentation was implicitly recognized as a special defense in a foreclosure action. See Regis v. ConnecticutReal Estate Investors Balanced Fund, Inc., 28 Conn. App. 760,769-70, 613 A.2d 321, cert. denied, 224 Conn. 907, 615 A.2d 1049
(1992); GF Mortgage Corp. v. Gilmore, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 144488 (November 6, 1995, D'andrea, J.). Moreover, Connecticut "has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact "may be actionable if the declarant has the means of knowing, ought to know or has a duty of knowing the truth.'" D'Ulisse-Cupo v. Boardof Directors of Notre Dame High School, 202 Conn. 206, 217,520 A.2d 217 (1987), quoting Richard v. A. Waldman Sons, Inc.,155 Conn. 343, 346, 232 A.2d 307 (1967). Here, the defendant has alleged byway of her special defense that she did not know that the Jessups would have to acquire title to her property for purposes of mortgaging the property and securing the loan. The sophisticated lender, Progressive and its attorney, knew or ought to have known exactly what was going to happen with regard to the defendant's title in the property. Furthermore, this court recognizes its obligation to take the facts alleged in the special defense and construe them "in the manner most favorable to sustaining their legal sufficiency." Connecticut National Bankv. Douglas, supra, 221 Conn. 536. Accordingly, the plaintiff's motion to strike the second special defense as to negligent misrepresentation is denied.
In terms of innocent misrepresentation it is an element of negligent misrepresentation. See Richard v. A. Waldman Sons,Inc., supra, 155 Conn. 346. Accordingly, the motion to strike having been denied as to negligent misrepresentation it is denied as to innocent misrepresentation. As such, the plaintiffs motion to strike the second special defense is denied in its entirety. CT Page 10577
Third Special Defense
The third special defense provides in pertinent part that "[t]he plaintiff is equitably estopped from enforcing the terms of the note and mortgage it recites." The plaintiff argues that this special defense should be stricken because sufficient facts have not been alleged to state a cause of action for equitable estoppel. The defendant argues in opposition that sufficient facts have been alleged.
Equitable estoppel has been recognized as a valid defense in a foreclosure action. See GF Mortage Corp. v. Gilmore, supra, Superior Court, Docket No. 144488. Moreover "[e]stoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise exsisted . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. . . ." (Citations omitted; internal quotation marks omitted.) Boyce v. Allstate Insurance,236 Conn. 375, 383-84, 673 A.2d 77 (1996). Here, the defendant relied in good faith on Progressive and its attorney to her detriment. Accordingly, the plaintiff's motion to strike the third special defense is denied.
Fourth Special Defense
The fourth special defense provides in pertinent part that "[t]he plaintiff is barred from enforcing the note and mortgage that it recites because of a breach by the lender of an implied covenant of good faith and fair dealing." The plaintiff argues that this special defense should be stricken because the breach of the implied covenant of good faith and fair dealing is not a cognizable defense to a foreclosure action. The defendant argues in opposition that breach of the implied covenant of good faith and fair dealing is a recognized special defense and that sufficient facts have been alleged. In its reply brief the plaintiff responds by arguing that pre-contract formation behavior cannot amount to a breach of the implied covenant of good faith and fair dealing.
Breach of the implied covenant of good faith and fair dealing is a recognized special defense in a foreclosure action. BerkeleyFederal Bank Trust v. Rotko, supra, Superior Court, Docket No. CT Page 10578 318648. Despite being a recognized special defense, breach of the implied covenant of good faith and fair dealing applies to performance of contractual terms and not to pre-contract formation behavior. See Magnan v. Anaconda Industries, Inc.,193 Conn. 558, 566-67, 479 A.2d 781 (1984). "Essentially, it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." Id., 567. Here, the defendant is in essence only alleging facts relating to pre-contract formation behavior. Accordingly, the plaintiffs motion to strike the fourth special defense is granted.
Fifth Special Defense
The fifth special defense provides in pertinent part that "[t]he plaintiff is barred from enforcing the note and mortgage it recites because there has been a failure or want of consideration." The plaintiff argues that this special defense should be stricken because there did exist sufficient consideration. The defendant argues in opposition that want of consideration was present because the defendant was never provided with her own counsel as promised by Progressive.
The defendant has not alerted this court to any case law which states that failure to provide an attorney amounts to want of consideration. Furthermore, there is no indication in the allegations of the plaintiff or defendant that an attorney would be provided to the defendant as consideration for the note and mortgage. Accordingly, the plaintiffs motion to strike the fifth special defense is granted.
Sixth Special Defense
The sixth special defense provides in pertinent part that "[t]he plaintiff is barred from enforcing the terms of the note and the mortgage it recites because it would be unconscionable to Beverly Snyder to enforce those terms." The plaintiff argues that this special defense should be stricken because sufficient facts have not been alleged. The defendant argues in opposition that "the lender's conduct associated with inducing the defendant to enter into this arrangement does rise to the level of unconscionability." Memorandum in Opposition to Motion to Strike, CT Page 10579 p. 11.
"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. . . . applied to real estate mortgages, the doctrine of unconscionability draws heavily on its counterpart in the Uniform Commercial Code which, although formally limited to transactions involving personal property, furnishes a useful guide for real property transactions. . . . As Official Comment I to § 2-302 of the Uniform Commercial Code suggests, the basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . ." (Citations omitted; internal quotation marks omitted.) Family Financial Services,Inc. v. Spencer, 41 Conn. App. 754, 763, 677 A.2d 479 (1996). Here, the defendant has not made any allegation in its special defense that the clauses in the contract are one-sided. Accordingly, the plaintiffs motion to strike the sixth special defense is granted.
Seventh and Ninth Special Defenses
The seventh special defense provides in pertinent part that "[t]he plaintiff is barred from recovery and the relief it seeks because the instruments prepared by the lender, through its agents, are illegal contracts violative of public policy. Moreover, the ninth special defense provides in pertinent part that "[t]he plaintiff is barred from pursuing this action, from recovery and from the relief it seeks, under General Statutes §§ 33-396 and 33-412 because the lender transacted business in this state in violation thereof."[1] These motions to strike the seventh and ninth special defense are being considered together because the defendant opposes the plaintiffs motion to strike by arguing that the original lender, Progressive, was not authorized to transact business in Connecticut and that by virtue thereof the mortgage and note were illegal and contrary to public policy. By contrast, the plaintiff argues the following in support of its motion to strike: that the seventh special defense should be stricken because the defendant has not alleged that the note and mortgage are illegal contracts violative of the Uniform Commercial Code and/or the Connecticut General Statutes and; that the ninth special defense should be stricken because it is not a recognized defense in a foreclosure action and securing mortgages does not constitute transacting business in Connecticut and, CT Page 10580 therefore, no authority such as a Connecticut certificate of incorporation is required.
This court has already considered the failure to obtain authority to transact business in this state as a valid special defense to a foreclosure action. See Mundaca Investment Corp. v.Daddona, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 144551 (January 4, 1996, Hickey, J.). Despite this assertion, the plaintiff and Progressive were under no obligation to get a certificate of authority from the secretary of state to transact business with regard to this transaction. General Statutes § 33-920 (b) provides in pertinent part that "[t]he following activities, among others, do not constitute transacting business within the meaning of subsection (a) of this section: . . . (7) creating or acquiring indebtedness, mortgages and security interests in real or personal property; (8) securing or collecting debts or enforcing mortgages and security interests in property securing the debts. . . ." Moreover, General Statutes §§ 33-396 and 33-412 on which the defendant relies in its special defense were repealed effective January 1, 1997. As such, the defendant cannot properly assert a special defense claiming that Progressive needed the authority of the secretary of state to enter into a mortgage and a note with the defendant. Accordingly, the plaintiffs motion to strike the ninth special defense is granted. The plaintiff's motion to strike the seventh special defense is also granted because the defendant premises its arguments on Progressive not being able to transact business in Connecticut, something Progressive clearly had the statutory authority to do with regard to this transaction.
Eighth Special Defense
The eighth special defense provides in pertinent part that "[t]he plaintiff is barred from recovery and the relief it seeks because the instruments prepared by the lender, through its agents, and executed by the defendant, Beverly Snyder, were executed as a result of mistake." The plaintiff argues that this special defense should be stricken because the defendant has not alleged the elements of mistake. The defendant argues in opposition that there was a misrepresentation as to the nature of the transaction and that this amounts to mistake.
Mistake is a recognized special defense to a foreclosure action. Berkeley Federal Bank Trust v. Rotko, supra, Superior CT Page 10581 Court, Docket No. 318648. Moreover, the plaintiff correctly cites to Pacelli Brothers Transportation. Inc. v. Pacelli,189 Conn. 401, 408, 456 A.2d 325 (1983), where the court found that "[w]here a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient in making the contract he is deemed to have assumed the risk of mistake." No allegation is made in the special defense itself that documents were switched or that the defendant was shown one document and then made to sign another. Here, the defendant allegedly signed the documents without having a firm understanding of what was actually taking place. The defendant, therefore, assumed the risk of a mistake. Accordingly, the plaintiffs motion to strike the eighth special defense is granted.
Tenth Special Defense (mislabeled ninth special defense)
The tenth special defense provides in pertinent part that "[t]his civil action should be barred by the doctrine of laches." The plaintiff argues that this special defense should be stricken because the defendant has not alleged sufficient facts. The defendant argues in opposition that sufficient facts have indeed been alleged.
Laches is a recognized special defense to a foreclosure action. Berkeley Federal Bank Trust v. Rotko, supra, Superior Court, Docket No. 318648. Moreover, "[l]aches consists of an inexcusable delay which prejudices the defendant. . . . Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . Absent prejudice to the defendant, the mere lapse of time does not constitute laches." (Citations omitted; internal quotation marks omitted.) FederalDeposit Insurance Co. v. Voll, 38 Conn. App. 198, 210,660 A.2d 358, cert. denied, 235 Conn. 903, 665 A.2d 901 (1995). Here, the defendant has not alleged that she was prejudiced in any way. Furthermore, existential angst as to what is going to happen to her house, as argued by the defendant in its memorandum, does not qualify as prejudice. Surely, the defendant would have felt the same angst had the action been filed closer to the time of default. This angst would have, however, been experienced by the defendant sooner, in other words sometime in 1992 or 1993, rather than during the pendency of this action. The defendant has, therefore, not been prejudiced by the delay in bringing suit. CT Page 10582 Accordingly, the plaintiffs motion to strike the tenth special defense is granted.
Conclusion as to Special Defenses
As such, the plaintiffs motion to strike the special defenses is denied as to special defenses one, two and three, but granted as to special defenses four, five, six, seven, eight, nine ten.
Counterclaim
Each count of the counterclaim will be addressed individually. As a preliminary matter, however, the plaintiff argues in its motion to strike that the defendant cannot properly assert the first through fifth count of the counterclaim against the plaintiff, because these counts allege behavior by the original lender, Progressive. The general rule is that "[t]he plaintiff, as assignee of the mortgage, st[ands] in the shoes of his assignor, with the same rights. . . ." (Citation omitted; internal quotation marks omitted.) Reynolds v. Ramos, supra,188 Conn. 319-20 n. 5. Because the plaintiff stands in the shoes of Progressive, the defendant may assert a counterclaim against the plaintiff if that counterclaim could have been asserted against Progressive. In addition, the plaintiff makes no argument as to why it should fall under any exception to this general rule. Accordingly, this court considers the counterclaim raised against the plaintiff based on Progressive's behavior as valid in terms of the assignor/assignee issue. Moreover, in terms of whether the separate counts state valid counterclaims, the motion to strike will be considered in light of the decision with respect to the special defenses, as the law on each topic is the same.
The plaintiff also argues that the counterclaim does not arise out of the same transaction as the complaint. Despite these assertions, the defendant would not have been facing a foreclosure had it not been for the original loan and mortgage with Progressive and the subsequent assignments. Moreover, the counterclaim specifically alleges that Progressive's behavior led to the defendant signing the mortgage documents, the subject matter of this action. Judicial economy would, consequently, be served by considering this counterclaim. See Source One v.Dziurzynski, supra, Superior Court, 17 Conn. L. Rptr. 30. This court, therefore, finds, consistant with its ruling on the prior special defenses, that the counterclaim does arise out of the transactions in the complaint. CT Page 10583
First Count
The first count of the counterclaim provides in pertinent part that "the lender, Progressive], induced Beverly Snyder to execute the note and mortgage by misrepresentations that were fraudulent." As the plaintiffs motion to strike the special defense of fraudulent misrepresentation was denied, it is similarly denied as to this count of the counterclaim. Accordingly, the plaintiffs motion to strike the first count of the counterclaim sounding in fraudulent misrepresentation is denied.
Second Count
The second count of the counterclaim provides in pertinent part that "the lender, [Progressive], induced Beverly Snyder to execute the note and mortgage by negligent misrepresentations." As the plaintiffs motion to strike the special defense of negligent representation was denied, it is similarly denied as to this count of the counterclaim. Accordingly, the plaintiffs motion to strike the second count of the counterclaim sounding in negligent misrepresentation is denied.
Third Count
The third count of the counterclaim provides in pertinent part that "the lender, [Progressive], induced Beverly Snyder to execute the note and mortgage by innocent misrepresentations." As the plaintiffs motion to strike the special defense of innocent misrepresentation was denied, it is similarly denied as to this count of the counterclaim. Accordingly, the plaintiffs motion to strike the third count of the counterclaim sounding in innocent misrepresentations is denied.
Fourth Count
The fourth count of the counterclaim provides in pertinent part that "the lender, [Progressive, violated an implied covenant of good faith and fair dealing to Beverly Snyder." As the plaintiffs motion to strike the special defense of breach of the implied covenant of good faith and fair dealing was granted, it is similarly granted as to this count of the counterclaim. Accordingly, the plaintiffs motion to strike the fourth count of the counterclaim sounding in breach of the implied covenant of CT Page 10584 good faith and fair dealing is granted.
Fifth Count
The fifth count of the counterclaim provides in pertinent part that "the lender, [Progressive, engaged in unfair trade practices in violation General Statutes § 42-110b, et seq., [the Connecticut Unfair Trade Practices Act, ("CUTPA")]." The plaintiff argues that this counterclaim should be stricken because the defendant has not alleged sufficient facts to state a cause of action under CUTPA, whereas the defendant argues in opposition that it has alleged sufficient facts to state a cause of action under CUTPA.
In determining whether a practice violates CUTPA, we use the following criteria: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen." (Internal quotation marks omitted.) Williams Ford,Inc. v. Hartford Courant Co., 232 Conn. 559, 591, 657 A.2d 212
(1995).
Moreover, "[i]n discussing the third criterion, the federal trade commission has stated: The independent nature of the consumer injury criterion does not mean that every consumer injury is legally unfair, however. To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces;and it must be an injury that consumers themselves could notreasonably have avoided. Letter from Federal Trade Commission to Senators Ford and Danforth (Dec. 17, 1980) (reprinted in Averitt, The Meaning of Unfair Acts or Practices in 5 of the Federal Trade Commission Act, 70 Geo. L.J. 225, 291 [1981]) . . . McLaughlinFord, Inc. v. Ford Motor Co., supra, [192 Conn.] 569-70." (Emphasis added; internal quotation marks omitted.) WilliamsFord, Inc. v. Hartford Courant Co., supra, 232 Conn. 592. Here, it is apparent that the defendant could have avoided the pitfalls of the transaction had she hired her own attorney. Furthermore, the defendant could have refused to go forward with the transaction CT Page 10585 until she was either provided with impartial representation or obtained such representation on her own. There is certainly no independent legal duty such that lenders must furnish attorneys to borrowers. The only allegation in this case is that Progressive represented that it would furnish an attorney to the defendant. If the defendant was unhappy with the arrangement she could have certainly gone out and procured the services of an independent attorney. The defendant could have, therefore, easily avoided the injury she is claiming by hiring her own attorney. As such, the defendant has no viable CUTPA action against Progressive and consequently the plaintiff. Accordingly, the plaintiffs motion to strike the fifth count of the counterclaim sounding in CUTPA is granted.
Also, although the plaintiff has failed to raise the issue in its motion to strike, the CUTPA count presents a potential statute of limitations problem challenging the subject matter jurisdiction of this court. "The trial court . . . [can determine] sua sponte that its subject matter jurisdiction [is] in question. . . ." Glastonbury Volunteer Ambulance Assn., Inc.v. Freedom of Information Commission, 227 Conn. 848, 851,633 A.2d 305 (1993). Generally, limitations on actions are deemed procedural, or personal, and are thus, subject to waiver. DiamondNational Corp. v. Dwelle, 164 Conn. 540, 546-47, 325 A.2d 259
(1973). However, the legislature, in creating a statutory right of action, may prescribe a statute of limitation for that action. See Cashman v. Calvo, 196 Conn. 509, 512 n. 2, 493 A.2d 891 (1985). These types of limitations statutes are considered substantive or jurisdictional. Diamond National Corp. v. Dwelle, supra,164 Conn. 547; see also Travelers Indemnity Co. v. Rubin,209 Conn. 437, 445-46, 551 A.2d 1220 (1988); D'Occhio v. Connecticut RealEstate Commission, 189 Conn. 162, 181-82, 455 A.2d 833 (1983). As CUTPA is a statutory creation, the legislature has limited CUTPA claims to three years from the occurrence of a violation. General statutes 42-110g (f) provides: "[a]n action under this section may not be brought more than three years after the occurrence of a violation of this chapter." Moreover, "[t]he three year limitations period for a CUTPA claim is a substantive rather than procedural limitation. . . ." International Inns, Inc. v. Oja,
Superior Court, judicial district of New London at Norwich, Docket No. 104344 (September 8, 1994, Leuba, J.).
The defendant should have brought its CUTPA count within the three year statute of limitations. The three year statute of limitations has expired because the alleged misrepresentations of CT Page 10586 Progressive, the basis of the CUTPA counterclaim, occurred in or about 1989 at the time the note and mortgage were originally signed. A CUTPA count should, therefore, have been brought against Progressive in or before 1992, prior to the expiration of the three year statute of limitations. Accordingly, the plaintiffs motion to strike the fifth count of the counterclaim sounding in CUTPA is also granted on statute of limitations grounds.
Sixth Count
The sixth count of the counterclaim is exactly the same as the fifth count except that it alleges a violation of CUTPA by the plaintiff and not Progressive. The fact that the allegation is against the plaintiff and not Progressive only detracts from the defendant's cause of action because as assignee the plaintiff did not engage in any behavior that could be construed as violative of CUTPA. Furthermore, the court's arguments against sustaining the fifth count of the counterclaim are equally applicable to the sixth count. Accordingly, the plaintiffs motion to strike the sixth count of the counterclaim sounding in CUTPA is granted.
Conclusion as to Counterclaim
The plaintiff's motion to strike is denied as to the first, second and third count of the counterclaim, but granted as to the fourth, fifth and sixth count of the counterclaim.
Hickey, J.